UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| CARRIER ACCESS, INC., | Case No. 4:22-cv-00005 |
| Plaintiff, | |
| v. | |
| | AMENDED COMPLAINT |
| CYXTERA COMMUNICATIONS, LLC, | |
| Defendant. | |

COMES NOW the Plaintiff, Carrier Access, Inc., by and through the undersigned counsel, and for its causes of action, states to the Court as follows:

**PARTIES, JURISDICTION & VENUE**

1. Plaintiff, Carrier Access, Inc. ("Carrier"), is a corporation organized and existing under the laws of the State of Iowa with its principal place of business in Polk County, Iowa.

2. Defendant, Cyxtera Communications, LLC ("Cyxtera"), is a foreign limited liability company organized in Missouri with its principal place of business in Florida.

3. Cyxtera does business in the state of Iowa and has been registered as a foreign corporation with the Secretary of the State of Iowa since December 30, 2016.

4. Venue is proper in the Iowa District Court for Polk County pursuant to Iowa Code Section 616.14 and 616.17, as Cyxtera has a registered agent in the state of Iowa.

5. The amount of damages in controversy satisfies the jurisdictional limits of the

District Court.

## BACKGROUND FACTS

6. On March 12, 2012, Carrier entered into a contract with Qwest Corporation d/b/a/ CenturyLink QC ("CenturyLink"), titled "CenturyLink Master Representative Agreement" (the "CenturyLink Agreement").

7. A true and correct copy of the CenturyLink Agreement is attached hereto as Exhibit A.

8. Under the terms of the CenturyLink Agreement, Carrier agreed to solicit colocation and data center customers on behalf of CenturyLink in exchange for certain compensation, including trailing commissions.

9. Addendum A-1 of the CenturyLink Agreement sets forth the Commission Rate Schedules by which Carrier was compensated.

10. A true and correct copy of Addendum A-1 of the CenturyLink Agreement is attached hereto as Exhibit B.

11. At all material times hereto, the CenturyLink Agreement was performed, in substantial part, within the state of Iowa.

12. Paragraph 9 of the CenturyLink Agreement provides,

> "[t]he initial term of this Agreement shall be for a period of three (3) years from the Effective Date and shall be renewed thereafter automatically for successive one (1) year terms, unless sooner terminated under this Agreement. Either party may terminate this Agreement at any time upon giving the other party at least thirty (30) days prior written notice."

13. Alternatively, the CenturyLink Agreement provides,

    "[t]his Agreement may be terminated by CenturyLink: (i) upon at least fifteen (15) calendar days prior written notice by CenturyLink for breach by Representative of any provision of this Agreement, unless such breach has been cured by Representative, to CenturyLink's reasonable satisfaction, within the notice period; or (ii) immediately upon written notice by CenturyLink (A) if Representative participates or engages in any fraudulent activity relating to CenturyLink or a Subscriber or if Representative falsifies or forges any order for Service, (B) if Representative fails to comply with the provisions set forth in Sections 6(a)(1) or 7 of this Agreement, or (C) in the event that Representative fails to achieve and to maintain any applicable minimum requirement as set forth in the applicable commission addendum."

14. The CenturyLink Agreement was never terminated pursuant to its terms.

15. Carrier has never received written notice from CenturyLink (or any other entity) terminating or attempting to terminate the CenturyLink Agreement pursuant to its terms.

16. In or around May 2017, CenturyLink sold its data center and colocation business to a consortium led by BC Partners, and including Medina Capital Advisors and Longview Asset Management.

17. After the completion of the sale, the datacenter and colocation business was combined with Medina Capital's security and data analytics businesses and

        named Cyxtera Communications, LLC.

18. On August 29, 2017, CenturyLink sent an email to Carrier in which CenturyLink represented that the CenturyLink Agreement, including all provisions regarding payment of commissions to Carrier for soliciting colocation and data center customers, would remain unchanged.

19. Within the same email, CenturyLink explicitly stated, "[y]ou can continue selling Cyxtera colocation and data center services under your existing CenturyLink agreement," and that, "[t]here is no change to your compensation."

20. In January of 2019, Carrier met with Cyxtera regarding their business relationship with one another, and on January 25, 2019, Cyxtera sent an email to Carrier stating that business acquired by Cyxtera will be "run under" the CenturyLink Agreement.

21. Carrier continued to receive commissions from CenturyLink and began receiving commission payments in November 2019 from Cyxtera in accordance with the terms and provisions of the CenturyLink Agreement.

22. For more than eighteen months, Cyxtera continued to accept Carrier's clients and their payments, and continued making commission payments to Carrier under the terms of the CenturyLink Agreement.

23. On June 10, 2021, Carrier was notified by Cyxtera that its commission payments were being terminated.

24. Cyxtera did not terminate the CenturyLink Agreement in accordance with the terms of the CenturyLink Agreement regarding termination.

25. Carrier has been and will be damaged to due to unpaid commissions.

## COUNT I—BREACH OF ORAL CONTRACT

26. Carrier repleads and realleges the foregoing paragraphs as though fully set forth herein.

27. After the sale of CenturyLink's colocation and data center business to what would eventually become Cyxtera, Carrier and Cyxtera entered into an oral agreement to abide by the terms of the CenturyLink Agreement, including the terms related to the payment of commissions.

28. Carrier has performed all the terms and conditions required of it by the CenturyLink Agreement.

29. Until June 10, 2021, Cyxtera performed all the terms and conditions required of it by the CenturyLink Agreement.

30. Cyxtera has breached the CenturyLink Agreement by improperly terminating the agreement and by refusing to pay Carrier its commissions and other compensation owed under the CenturyLink Agreement.

31. As a result of Cyxtera's breach, Carrier has sustained and will sustain damages.

WHEREFORE, Carrier requests a judgment against Cyxtera for the breach of an oral contract, for an amount that will fully and fairly compensate Carrier for its losses, together with interest as provided by law, and for such other and further relief as the Court deems just and proper.

## COUNT II—BREACH OF IMPLIED CONTRACT

32. Carrier repleads and realleges the foregoing paragraphs as though fully set forth herein.

33. Cyxtera received Carrier's book of business from CenturyLink, which book of

business was part of the CenturyLink Agreement. Cyxtera knew or should have known of the CenturyLink Agreement and its terms, including the provisions concerning the contract term, termination, and commissions and other compensation.

34. From May 2017 to June 9, 2021, Carrier rendered services for and solicited customers on Cyxtera's behalf.

35. The services and customers were accepted by and beneficial to Cyxtera.

36. In exchange, and for a period of over four years, the parties continued to act under and Carrier was compensated in accordance with the terms and commissions set forth in the CenturyLink Agreement, which conduct formed an implied contract.

37. Cyxtera breached this implied contract by wrongfully terminating the existing arrangement with Carrier, and by refusing to pay Carrier commissions and other compensation owed under the CenturyLink Agreement.

38. As a result of Cyxtera's breach of the implied contract, Carrier has sustained and will sustain damages.

WHEREFORE, Carrier requests a judgment against Cyxtera for the breach of an implied contract, for an amount that will fully and fairly compensate Carrier for its losses, together with interest as provided by law, and for such other and further relief as the Court deems just and proper.

## COUNT III—UNJUST ENRICHMENT

39. Carrier repleads and realleges the foregoing paragraphs as though fully set forth herein.

40. Cyxtera was enriched by the receipt of clients supplied by and services performed by Carrier.

41. These services were performed by Carrier in accordance with the terms and provisions of the CenturyLink Agreement.

42. Cyxtera has not compensated Carrier for the services it performed under the CenturyLink Agreement, and it is unjust to allow Cyxtera to retain the benefit under the circumstances.

WHEREFORE, Carrier requests an equitable judgment against Cyxtera for unjust enrichment, for an amount that will fully and fairly compensate Carrier for its losses, together with interest as provided by law, and for such other and further relief as the Court deems just and proper.

### COUNT IV—BREACH OF WRITTEN CONTRACT

43. Carrier repleads and realleges the foregoing paragraphs as though fully set forth herein.

44. The written CenturyLink Agreement was executed by Carrier and CenturyLink, and sets forth obligations and responsibilities for Carrier and CenturyLink.

45. Upon information and belief, as part of the sale of CenturyLink's colocation and data center business to what would eventually become Cyxtera, Cyxtera succeeded to CenturyLink's rights and obligations under the CenturyLink Agreement.

46. Cyxtera breached the CenturyLink Agreement by wrongfully terminating it and by refusing to pay Carrier commissions and other compensation owed under the agreement.

47. As a result of Cyxtera's breach of the CenturyLink Agreement, Carrier has sustained and will sustain damages.

WHEREFORE, Carrier requests a judgment against Cyxtera for the breach of the CenturyLink Agreement, for an amount that will fully and fairly compensate Carrier for its losses,

together with interest as provided by law, and for such other and further relief as the Court deems just and proper.

                                                      Respectfully submitted,

 /s/ Frederick B. Anderson
**Frederick B. Anderson AT0000467**
SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Fax: (515) 223-8887
Email:   anderson@sagwlaw.com

/s/ Brian O. Marty
**Brian O. Marty AT0011622**
SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Fax: (515) 223-8887
Email:   marty@sagwlaw.com

/s/ Noah H. Ridgway
**Noah H. Ridgway AT0014900**
SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Fax: (515) 223-8887
Email:   ridgway@sagwlaw.com

***ATTORNEYS FOR PLAINTIFF***

COPY TO:

Mark L. Zaiger, AT0008655
Jackson C. Blais, AT0014222
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 Third Street SE, P.O. Box 2107
Cedar Rapids, Iowa 52406
Telephone: (319) 365-9461
Fax: (319) 365-8564
Email: mlz@shuttleworthlaw.com
Email: jcb@shuttleworthlaw.com
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on January 27, 2022, a copy of this document was served electronically via CM/ECF upon counsel of record for each party to the action in compliance with Rule 5 of the Federal Rules of Civil Procedure.

*/s/ Noah H. Ridgway*
Shindler, Anderson, Goplerud & Weese, P.C.